May Term,
1859.

Wood
v.
Mears.

---

## Wood v. Mears.

Complaint alleging that on, &c., at, &c., the defendant wrongfully, &c., laid a pile of dirt and gravel in *East* street, between *Washington* and *Market* streets, in the city of *Indianapolis*, &c., which said *East* street was then and there a public highway, &c., and the plaintiff, in carefully driving along said street, between the streets aforesaid, and being then and there ignorant of the existence of said pile of dirt and gravel, the evening being dark, ran against and upon the same, whereby his gray mare, of the value, &c., was then and there thrown down and fatally injured, so as to render her wholly worthless, and the shafts of his buggy broken, and his harness ruined; and that by reason of the pile of dirt and gravel so laid up, &c., he has suffered damage to the amount of 500 dollars; Wherefore, &c. Answer, 1. By a general denial. 2. That the defendant did not wrongfully, &c., lay a pile of dirt and gravel in *East* street; but alleges the truth to be that, on, &c., at, &c., the defendant being about to build and engaged in building a house, on lot, &c., bordering on said street, did deposit in said street, near to said building being erected, materials for such building, for a reasonable time and not longer, to-wit, a lot of sand, which is the same "pile of dirt and gravel" complained of. The defendant says he left ample space in said street, to-wit, fifty feet, around said sand, for the passage of all traveling that way, and for wagons, buggies, &c. Wherefore, if any harm came to the plaintiff's buggy,

&c., it was the fault of the plaintiff, &c. 3. The same as the second, adding that at, &c., aforesaid, there was an ordinance of the city of *Indianapolis*, passed *April* 20, 1852, and afterwards continued in force, whereby "persons engaged in building or making pavement, may deposit materials, &c., in any of the streets or alleys for a reasonable time; but no person shall be authorized to fill up any gutter or channel for the passage of water, or so obstruct the said street or alley as to prevent the passage of carriages, nor occupy more than one-third of such street or alley." And the defendant says that he did not fill up any gutter, &c., nor so obstruct said street as to prevent the passage of carriages, nor did he occupy more than one-third of said street; and he left open, unoccupied, and unobstructed, a large space of and upon said street, around said pile, to-wit, sixty feet, along and through which the plaintiff might have safely driven his mare, &c. 4. That the defendant deposited the same, as alleged in the second and third paragraphs, and for the purpose therein named, which is the same pile complained of, as he had a right to do; that the same had not remained there an unreasonable length of time; and the plaintiff, well knowing that said materials were there, carelessly drove his mare and buggy upon said sand, and the mare being old and clumsy, fell and slightly injured the shafts of the buggy, doing no damage to the harness. Demurrer to the second, third, and fourth paragraphs sustained.

*Held*, 1. That, as a general rule, a person who without fault or negligence on his own part, receives a bodily hurt, or suffers damage to his horse or carriage, in consequence of a direct collision with an obstruction in the highway, is specially damnified, and may maintain an action against the author of the obstruction.

2. That a street of a city may be obstructed by placing material for building, &c., in it, for a reasonable time, in a manner likely to occasion the least inconvenience to the public, if from want of room for such material elsewhere, it be necessary to deposit it in the street.

3. That the second paragraph of the answer was bad for not showing a reasonable necessity for placing the building materials upon the street; that the Court cannot infer such necessity from the fact that the building was being erected in a populous and thriving city.

4. That the ordinance pleaded was continued in force by § 84 of the general act of 1852, for the incorporation of cities; that the ordinance is not inconsistent with the provisions of that act, but on the contrary it falls expressly within § 57 thereof, which confers upon the common council plenary power over the streets, &c.; that the ordinance cannot be construed as merely protecting the party depositing an obstruction in the street from prosecution by the city—it protects him likewise from actions brought by other persons.

5. That the common council have exclusive power over the streets, &c., and have the right to determine to what uses they shall be applied, and under what circumstances and to what extent they may be encumbered.

6. That the fourth paragraph of the answer is good.

APPEAL from the *Marion* Court of Common Pleas.

WORDEN, J.—Complaint by the appellee against the appellant, alleging that on, &c., at, &c., the defendant wrong-

fully, carelessly, and negligently laid a pile of dirt and gravel in *East* street, between *Washington* and *Market* streets, in the city of *Indianapolis*, in said county, which said *East* street was then and there a public highway, and known and used by the public as such, and the plaintiff, in carefully driving along said *East* street, between the streets aforesaid, and being then and there ignorant of the existence of said pile of dirt and gravel, the evening being dark, ran against and upon the said pile of dirt and gravel, whereby his gray mare, of the value of 300 dollars, was then and there thrown down and fatally injured, so as to render her wholly worthless, and the shafts of his buggy broken, and his harness ruined, and that by reason of the pile of dirt and gravel so laid up in the street aforesaid, he has suffered damage to the amount of 500 dollars. Wherefore, &c.

The defendant answered—

1. By general denial.

2. That he did not wrongfully, negligently, or carelessly lay a pile of dirt and gravel in *East* street, but alleges the truth to be, that on, &c., at, &c., the defendant being about to build, and engaged in building, a house on lot No. —, in square —, in *Indianapolis*, bordering on the said street, did deposit in said street, near to said building being erected, materials for such building, for a reasonable time and not longer, to-wit, a lot of sand, which is the same pile of "dirt and gravel" complained of. The defendant says that he left ample space in said street, viz., the space of fifty feet, around said sand, for the passing and repassing of all traveling that way, and for wagons, buggies, carriages, and other vehicles. Wherefore, if any harm came to the plaintiff's buggy, harness, or mare, it was the fault of the said plaintiff, &c.

3. That the defendant was about to, and engaged in building, as in the second paragraph is alleged, and for that purpose did deposit for a reasonable time, and not longer, sand in said street for said building, which is the same pile complained of (but he denies that it was wrongfully, carelessly, or negligently done), and says that at, &c., aforesaid,

there was an ordinance of the city of *Indianapolis*, passed *April* 20, 1852, and afterwards continued in force, whereby "Persons engaged in building or making pavement, may deposit materials for such building or pavement, in any of the streets or alleys, for a reasonable time; but no person shall be authorized to fill up any gutter or channel for the passage of water, or so obstruct the said street or alley as to prevent the passing of carriages, nor occupy more than one-third of such street or alley." And the defendant says that, by such deposit, he did not fill up any gutter or channel for the passage of water; nor did he so obstruct said street as to prevent the passing of carriages; nor did he occupy thereby, more than one-third of said street, and left open, unoccupied, and unobstructed, a large space of and upon said street, around said pile, to-wit, sixty feet, along and through which the plaintiff might have safely driven his mare and buggy.   Wherefore, &c.

4. That the defendant deposited the sand, as alleged in the second and third paragraphs, and for the purpose therein named, which is the same pile complained of, as he had a right to do; that the same had not remained there an unreasonable length of time, and the plaintiff, well knowing that said materials were there in said street, carelessly drove his mare and buggy upon said sand, and the mare being old and clumsy, fell and slightly injured the shafts of the buggy, doing no damage to the harness.   Wherefore, &c.

5. Substantially as the second.

The plaintiff demurred separately to the second, third, fourth, and fifth paragraphs of the answer, and the demurrers were sustained.   To the ruling the defendant excepted.

Trial by jury on the general denial; verdict and judgment for the plaintiff, a new trial being denied.

The ruling of the Court on the demurrers, is assigned for error.

The general proposition needs the citation of no authorities in its support, that a person who, without fault or negligence on his own part, receives a bodily hurt, or suffers a damage to his horse or carriage, in consequence of a direct

collision with an obstruction in the highway, is specially damnified, and may maintain an action against the author of the obstruction.

But this rule may be subject to some modifications and restrictions, in its application to particular cases. What would be deemed an illegal obstruction, such as would render the party obstructing liable, in one place and under one set of circumstances, might not in another. The primary and principal use of a highway is for travel; but it is not clear that it may not, in many cases, be legally occupied, in some measure, for other purposes. Thus it is said by a late author on highways (Ang. on Highw., § 25), that " A correct distinction has been suggested between a highway in the country, and a street in a populous commercial city; and it has been considered that the restricted use of highways in the country, has been that they have been needed for no other purposes; but such is not the case with the streets of a city. There are certain uses to which, in modern times, the latter have been generally applied—not uses merely conducive to, but almost necessary for, the comfort, health, and prosperity of the public; and they have been both sanctioned by custom, and approved by experience."

In *O'Linda* v. *Lothrop*, 21 Pick. 292, 297, it was observed by the Court, that "What may be deemed a reasonable and proper use of a way, public or private, must depend much on the local situation, and much on public usage. The general use and the acquiescence of the public, is evidence of the right. The owner of land may make such reasonable use of a way adjoining his land, as is usually made by others similarly situated. As to the reasonableness of the use, it may well be laid down, that in a populous town where land is very valuable, it is not unreasonable to erect buildings and fences on the line of the street, and to place doors and gates in them so as when opened to swing over the street. When the owner of a lot in such a situation, has occasion to build, and for that purpose, to dig cellars, he may rightfully lay his building materials and earth within the limits of the street, provided

May Term, 1859.

Wood
v.
Mears.

he takes care not improperly to obstruct the same, and to remove them within a reasonable time. It is very obvious that without this privilege, it would be, in some situations, nearly or quite impracticable to build at all."

In the case of *The Commonwealth* v. *Passmore*, 1 Serg. and Rawle, 219, quoted with approbation in *The People* v. *Cunningham*, 1 Denio, 524, 530, Chief Justice Tilghman says: "It is true that necessity justifies actions which would otherwise be nuisances. It is true, also, that this necessity need not be absolute; it is enough if it be reasonable. No man has a right to throw wood or stones into the street at his pleasure. But inasmuch as fuel is necessary, a man may throw wood into the street for the purpose of having it carried to his house, and it may lie there a reasonable time. So, because building is necessary, stones, brick, lime, sand, and other materials may be placed in the street, provided it be done in the most convenient manner. On the same principle, a merchant may have his goods placed in the street, for the purpose of removing them to his store in a reasonable time. But he has no right to keep them in the street for the purpose of selling them there, because there is no necessity for it."

But, on the supposition that the foregoing is a correct exposition of the law, we are of opinion that the second paragraph of the answer is defective in not showing a reasonable necessity for placing the building materials upon the street. There is no averment of facts showing such necessity, and the Court cannot infer it from the fact that the building was being erected in a populous and thriving city. Such necessity should have been shown, either by direct averment, or by facts from which it might be legitimately inferred. There was no error in sustaining the demurrer to this paragraph.

The third paragraph presents a different question. By this paragraph the defendant relies upon an ordinance of the city, whereby "persons engaged in building, &c., may deposit materials for such building, &c., in any of the streets or alleys, for a reasonable time," not occupying "more than one-third of such street or alley." This ordi-

nance, it is alleged, was passed in *April*, 1852. We take
it for granted that the city of *Indianapolis* surrendered her
former charter, and became a municipal corporation under
the act for the incorporation of cities, approved *June* 18,
1852.

This fact is conceded by counsel on both sides. By the
84th section of this act " All by-laws, ordinances, and reg-
ulations, not inconsistent with this act, shall remain and be
continued in force until altered or repealed by the common
council of such city."

The ordinance in question was continued in force, unless
it was inconsistent with the act.

The 57th section of this act is as follows, viz.: "The
common council shall have exclusive power over the streets,
highways, alleys, and bridges within such city, and to lay
out, survey, open, straighten, widen, or otherwise alter the
same, to make repairs thereto, and to construct and estab-
lish sidewalks, crossings, drains, and sewers. They may
cause buildings and structures, in the way of any street or
other public improvement, to be taken down and appropri-
ated, upon the payment of damages, as hereinafter pro-
vided."

This section confers upon the common council plenary
powers over the streets and alleys of the city. In the
language of HARRIS, J., in the case of *Milhan* v. *Sharp*, 17
Barb. (S. C. R.) 437, in speaking of the charter of the
city of *New York*—not broader in this respect than the sec-
tion under consideration—" The corporation yet has the ex-
clusive right to control and regulate the use of the streets
in the city. In this respect it is endowed with legislative
sovereignty. The exercise of that sovereignty has no limit,
so long as it is within the objects and trusts for which the
power is conferred. An ordinance regulating a street is a
legislative act, entirely beyond the control of the judicial
power of the state."

But it is objected that the act gives the common council
no power to pass such an ordinance as that in question.
After having enumerated various subjects upon which the
council have power to pass ordinances in the 35th section,

and amongst others "to prevent the encumbering of streets squares, sidewalks, and crossings, with vehicles, or any other substance or materials whatever, interfering with the free use of the same," the 38th section provides that "the common council shall have power to make other by-laws, not inconsistent with the laws of this state, and necessary to carry out the objects of the corporation."

The ordinance in question is not inconsistent with the laws of the state, for the reason, if for no other, that it is within the express power and authority conferred upon the common council by section 57, above quoted; and, as by that section, they are invested with full authority over the streets and alleys of the city, ordinances, or by-laws, on the subject of streets and alleys, are necessary to carry into effect the power thus granted.

The ordinance, in our opinion, is not inconsistent with the act, and was continued in force.

This construction is objected to, because there may be an abuse of the power thus conferred upon the common council. The argument, although the Court should not be unmindful of consequences, might well be addressed to the consideration of the legislature, who may at any time abridge the powers of municipal corporations, if they see cause to do so; but it cannot prevail with the Courts against a plain and unequivocal legislative enactment.

It is insisted that the ordinance should be construed merely as a protection to the party thus using a street or alley from a prosecution by the city; but we think such construction cannot prevail. The common council having exclusive power over the streets, highways, and alleys within the city, have the right to determine to what purposes they may be applied, and under what circumstances, and to what extent they may be encumbered. In a populous city, where much business is carried on, and where buildings are being constantly erected, it becomes a matter of necessity that the streets should be used for many purposes other than travel; and it is peculiarly proper that each city should determine for itself what its wants and necessities, in this respect, demand. Having made such determination,

May Term,
1859.

Wood
v.
Means.

and authorized persons building to place their materials in the street in the manner prescribed by the ordinance, such ordinance, in our opinion, affords a full protection, not only against the city, but all other persons, to every one acting under and within the ordinance.

This is not an unusual instance of the vesting of authority in municipal corporations.  Mr. *Angell* (Ang. on Highw. § 241), says:  This power of legitimating obstructions which would otherwise be regarded as nuisances, is not of such sovereign character that it may not be delegated either by a specific act, or by a general grant of authority.  Thus, it is a usual provision in our railway charters, that the companies may lay their tracks across or upon public roads or streets, with the consent and under the direction of the town and city authorities.  Municipal corporations have also large powers of this description, by virtue of the authority with which they are invested for the regulation and repair of highways.  They have an undoubted right, for instance, to obstruct and even entirely discontinue a highway, for the temporary purpose of repairing or regrading it. And in cities and villages there are many uses, aside from their mere use for foot passengers and vehicles moved by animal power, to which the municipal governments may devote the streets under their control, for the promotion of health, trade, commerce, and the public convenience."

The paragraph in question, by its averments, shows the defendant to have been within the terms of the ordinance pleaded, and, in our opinion, the demurrer to it should have been overruled.

We see no substantial objection to the fourth paragraph of the answer.  It alleges that the plaintiff, well knowing that the materials were in the street, carelessly drove his mare upon the same, &c.  These facts are admitted by the demurrer, and it is clear that under such circumstances the plaintiff cannot recover.  *The President, &c., of Mount Vernon* v. *Dusouchett,* 2 Ind. R. 586.— *The Board of Trustees of the Wabash and Erie Canal* v. *Mayer,* 10 *id.* 400. *Vide,* also, Ang. on Highw., § 290.  The demurrer to this paragraph should also have been overruled.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for further proceedings.

*J. L. Ketcham* and *I. Coffin*, for the appellant (1).

*J. W. Gordon*, for the appellee (2).

(1) Counsel for the appellant cited Ordinances of *Indianapolis, April*, 1846, p. 45, § 4; 1. R. S. p. 221, § 84; *Id.* p. 215, § 57; *Town of Mt. Vernon* v. *Dusouchett*, 2 Ind. R. 586.